**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**THOMAS L. MEROS,**          :
          :
          :      **Case No. 2:17-CV-103**
      **Plaintiff,**    :
          :      **JUDGE ALGENON L. MARBLEY**
  **v.**          :
          :      **Magistrate Judge Deavers**
**CHRISTA A. DIMON,** *et al.*   :
          :
      **Defendants.**   :

## OPINION & ORDER

This matter is before the Court on the Motions to Dismiss of Defendants Daniel Ranke (ECF. No. 22); Nasser Youseff (ECF No. 23); Ralph McAllister and James Sweeney (ECF No. 28); Miguel Chiappero and Sharon Chiappero (ECF No. 29); and W. Martin Midian and Monica Redman (ECF No. 59), as well as a Motion for Judgment on the Pleadings by Defendant Dean Rooney (ECF No. 32), a Motion for Summary Judgment by Defendant James Tekavec (ECF No. 61), and Motions to Declare Plaintiff a Vexatious Litigator by Defendants Ranke and Youseff (ECF Nos. 22, 24). For the reasons stated below, Defendants' motions are **GRANTED**. Plaintiff Thomas Meros' claims against Defendants are **DISMISSED** and Plaintiff is declared a vexatious litigator.

## I.  BACKGROUND

### A.  Factual Background

Meros, a disbarred attorney, filed a complaint against numerous defendants. The complaint, though long and difficult to follow, appears to arise from seven sets of facts. First, Meros alleges that the "RICO scheme commenced on September 29, 1993" when Defendant Judge James J. Sweeney granted judgment on two cognovit notes against Plaintiff Meros in favor

of Mero's former client, Layla Shaheen. (ECF No. 4 at ¶ 102). Judge Sweeney ordered Meros to post $5,000 for payment to Shaheen and then issued a contempt order against Meros on August 29, 1994 when he failed to make the payment. (*Id.* at ¶¶ 48, 137). Meros appealed the cognovit notes judgment to the Eighth District Court of Appeals but the case was dismissed on October 24, 1994 because Meros failed to file the required praecipe. (*Id.* at ¶ 117). Meros alleges that he did, in fact, file the required praecipe, but Judge Sweeney and Defendant Ranke, who was a law clerk for the Eighth District Court of Appeals, "tamper[ed] with the computers" and "conspired to steal and retain the praecipe and conceal from the justice system that the praecipe had been properly filed." (*Id.* at ¶¶ 41, 43, 107).

Second, Meros alleges that Defendants Judge McCallister and Judge Sweeney conspired to issue monetary sanctions against Meros. (*Id.* at ¶¶ 186, 286). In 1995, McCallister issued sanctions against Meros and his client. (*Id.* at ¶¶ 177, 178, 186, 191, 288). Meros appealed and the appellate court reversed the sanctions. (*Id.* at ¶ 191).

Third, Meros alleges that Defendants Miguel and Sharon Chiappero, along with their attorney Defendant Rooney, conspired to defraud him in connection with the sale of Meros' home to the Chiapperos. (*Id.* at ¶¶ 198, 208, 211, 249). Meros filed for bankruptcy and sold his home to the Chiapperos in 1998 during the bankruptcy proceedings. (*Id.* at ¶¶ 198, 199, 235). In 2007, Meros sued the Chiapperos over the real estate transaction. Meros alleges that the Chiapperos committed perjury in connection with the 2007 lawsuit. (*Id.* at ¶¶ 206, 211, 213). The court found in favor of the Chiapperos. (*Id.* at ¶ 247). In April of 2013, the bankruptcy court issued a judgment against Meros in connection with the home sale issue. (*Id.* at ¶¶ 1, 213, 227, 247).

Fourth, Meros alleges that Defendants Youseff, Tekavec, and Rorapaugh conspired to deprive him of attorney's fees in a lawsuit. Meros represented Youseff's company, Physicians Diagnostic Imaging ("PDI") in an insurance coverage action against Grange Mutual Casualty Company. (*Id.* at ¶¶ 308, 309). In July of 1997, judgment was entered in Youseff and Meros' favor. (*Id.* at ¶ 316). After the judgment, Meros sued Youseff, PDI, Grange, and an attorney for Grange to recover his legal fees. *See Thomas L. Meros Co.*, *LPA, et al. v. Grange Mut. Cas. Co., et al.*, Franklin County Common Please Court Case No. 97CVH98346. After the dispute was settled, Meros then filed another action regarding the PDI attorney fees issue, asserting claims against numerous defendants, including Defendant Rorapaugh, who was in-house counsel for Grange at the time, alleging that attorneys working for Grange falsified the claims file in the previous PDI litigation and when Meros uncovered that fact Rorapaugh retaliated by leaving Meros' name off of the judgment check. *See Meros v. Rorapaugh, et al.*, Franklin County Common Please Court Case No. 99CVH01-201; (ECF No. 4 at ¶¶ 314, 319, 321, 322, 331). The case was ultimately dismissed. Meros alleges that Youseff and Tekavec—who became Youseff's attorney after Meros—filed a fraudulent malpractice claim against him in the bankruptcy proceeding related to the PDI case. (*Id.* at ¶¶ 317, 327, 330, 331). He alleges that Youseff, Tekavec, and Rorapaugh conspired with Trustee Ginley, who passed away in 1999, during the proceedings. (*Id.* at ¶¶ 176, 342, 348, 351).

Fifth, Meros alleges that the defendants conspired to destroy his law practice by taking away his law license. (*Id.* at ¶¶ 2, 8, 20, 30, 31, 374). Meros was first suspended from the practice of law in 1998. *Disciplinary Counsel v. Meros*, 699 N.E.2d 458 (Ohio 1998). Following his filing suit against his former client Shaheen, an attorney, and several judges including Judge Sweeney, the Board of Commissioners on Grievances and Discipline of the

Supreme Court found that Meros had engaged in conduct that was prejudicial to the administration of justice, engaged in conduct that adversely reflected upon his fitness to practice law, failed to preserve the confidence of a client, and asserted a position merely to harass or maliciously injure another, and suspended Meros from practice for 18 months. *Id.* at 459. Meros was permanently disbarred for additional ethical infractions, including his failure to cooperate with a disciplinary investigation, in July 2000. *See Cuyahoga Cty. Bar Ass'n. v. Meros*, 731 N.E. 2d 629 (Ohio 2000). Meros alleges that Defendant Coughlin, a member of the Ohio Disciplinary Counsel, "totally abdicated his duties and responsibilities" in relation to these disciplinary hearings. (ECF No. 4 at ¶ 31).

Sixth, Meros alleges that Defendants E. Sweeney (an Assistant U.S. Attorney), Stone (an attorney at the Ohio Disciplinary Counsel's Office), Hilbert (an Investigative Coordinator), and Dimon (an Assistant Attorney General at the Ohio Attorney General's Office) conspired to prevent Meros from receiving redress for his alleged harms by failing to investigate his complaints against other defendants. (ECF No. 4 at ¶¶ 22, 23, 31, 348, 344, 352-54, 360, 378, 381, 382). Meros met FBI agent William T'Kindt in 1996 to ask him to investigate Judge Sweeney, but Mr. T'Kindt stated that E. Sweeney would not allow the investigation. (*Id.* at ¶ 277). Meros then met with Special Agent Michael Massie of the FBI in 2004 to discuss the RICO conspiracy at issue here, and sent Massie a flow chart detailing the RICO enterprise. (*Id.* at ¶¶ 276, 278). Meros petitioned various individuals to investigate the conspiracy in 2010, and then met with Massie again in 2013. (*Id.* at 279). On March 16, 2016, Meros submitted disciplinary complaints about Defendants J. Sweeney, McCallister, and Ranke to Defendant Stone in the Ohio Disciplinary Counsel, who did not pursue disciplinary proceedings. (*Id.* at ¶¶ 23, 252, 388). Meros also sent Defendant Hilbert emails explaining the RICO conspiracy but he

did not investigate Meros' claims. (*Id.* at 366, 371-373). Defendant Dimon read Meros' blog exposing the conspiracy, but she too declined to investigate. (*Id.* at ¶¶ 361, 363, 365).

Finally, Meros alleges that Defendants E. Sweeney, Dimon, Midian, and Redman conspired to prevent Meros from receiving redress from collections of his tax debt. (*Id.* at ¶¶ 21-23, 44, 272-75, 353 on p. 157). On August 30, 2016, Defendants Redman and Midian, who are collection attorneys, told Meros that Defendant Dimon contacted them to pursue Meros for a tax deficiency. (*Id.* at ¶¶ 1, 356 on p. 158-59). These collection efforts arise from a debt that has been owed for over 18 years. (*Id.* at ¶¶ 274, 356, 362 on p. 161).

### B.     Procedural History

In January 2017, Meros filed a complaint in the Franklin County Court of Common Pleas which was removed to this Court by Defendant Emily Sweeney on February 2, 2017. (*See* ECF Nos. 1, 4). The complaint alleges violations of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO") and the Ohio Corrupt Practice Act ("OCPA"), as well as violations of Meros' civil rights under 42 U.S.C § 1983. This rambling, 182-page complaint contains allegations about a purported "complex but perpetual criminal enterprise" with "many actors committing many predicate and overt acts" dating back to 1993. (ECF No 4 at ¶ 1). Meros alleges that this "RICO enterprise" exists to destroy his ability to earn a living through the practice of law and divest Meros of all of his property. (*Id*. at ¶ 2). Meros claims damages to his business and law practice, loss of wages and goodwill, and harm to his reputation resulting from Defendants' enterprise. (*See id*. at ¶¶ 143, 158). In the remainder of the 400-paragraph RICO complaint, Meros accuses various defendants of tampering with evidence (*see id.* at ¶ 3), "depriving the citizens of Ohio of an honest court and justice system" (*id*. at ¶ 6), extortion and bribery (*see*, *e.g.*, *id.* at ¶ 48), and fraud. (*See, e.g.*, *id.* at ¶ 55). In paragraphs that regularly span

half of a page, Meros addresses nonsensical topics and discusses the conduct of individuals not even named as parties to the lawsuit.

In reality, it appears that Meros' RICO claims are tied to those associated with the loss of his law license—a result reached after multiple disciplinary and judicial proceedings. This is not the first lawsuit Meros has brought against those he perceives as responsible for the loss of his law license. Indeed, Meros has filed litigation in state court, and three previous federal cases arising out of the loss of his law license: *Meros v. Kilbane, et al.*, Northern District of Ohio, No. 1:95-cv-1660; *Meros v. O'Donnell*, *et al.*, Northern District of Ohio, No. 1:07-cv-436; and *Meros v. Sweeney*, *et al.*, Southern District of Ohio, No. 2:00-cv-396. All of these cases were dismissed. (*See id.*).

On September 27, 2017, this Court granted the motions to dismiss of Defendants E. Sweeney, Rorapaugh, Coughlan, Dimon, and Hilbert because Meros failed to respond to the motions as required by the local rules. (ECF No. 60). The remaining defendants now move to dismiss Meros' complaint on a variety of grounds, including lack of jurisdiction, failure to state a claim, and statute of limitations. Defendants Youseff, McAllister, Miguel and Sharon Chiappero, Rooney, Midian, Redman, and Tekavec's motions are currently unanswered.[1] During the pendency of these dispositive motions, Meros has filed frequent requests for extensions and other nondispositive motions. (*See*, *e.g.*, ECF Nos. 35, 39, 55, 56). Meros did file timely objections to Defendants Ranke and Sweeney's motions to dismiss. (ECF Nos. 30, 33).

---

[1] Meros did respond to Defendant McAllister's Motion to Dismiss on June 7, 2017. (ECF No. 51). However, the response was due on March 31, 2017. Meros moved for Extension of Time to Oppose McAllister's Motion to Dismiss on June 7, 2017, after the deadline for his opposition had passed (ECF No. 50). The Magistrate Judge denied the motion for extension of time for good cause shown. (ECF No. 54). Thus, the Court will treat Defendant McAllister's Motion as unanswered for the purposes of this order.

## II. STANDARD OF REVIEW

Defendants bring their motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted and Rule 12(b)(1) for lack of subject matter jurisdiction.[2] "A motion to dismiss based on Rule 12(b)(1) for lack of subject matter jurisdiction must be considered before a motion brought under Rule 12(b)(6) for failure to state a claim upon which relief can be granted." *HSBC Mortg. Servs., Inc. v. Horn*, No. 1:07CV699, 2008 WL 4449497, at *1 (S.D. Ohio Sept. 30, 2008). This order is necessary because "the Rule 12(b)(6) challenge becomes moot if this Court lacks subject matter jurisdiction." *Whitestone Grp., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, No. 2:15-CV-962, 2016 WL 1117595, at *2 (S.D. Ohio Mar. 21, 2016).

In considering motions to dismiss for lack of subject matter jurisdiction, "[t]he Sixth Circuit has distinguished between facial and factual attacks." *Id.* Facial challenges merely question the sufficiency of the pleading, whereas factual attacks challenge the factual existence of subject matter jurisdiction. *United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir.1994). In reviewing a facial challenge, the trial court takes the allegations as true and employs standards similar to 12(b)(6) safeguards. *Ohio Nat. Life Ins. Co. v. U.S.,* 922 F.2d 320, 325 (6th Cir.1990). In reviewing a factual challenge, no presumptive truthfulness applies and the trial court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Ritchie,* 15 F.3d at 598. In considering motions to dismiss for lack of subject matter jurisdiction, courts may look to evidence outside the pleadings. *Nichols v. Muskingum College,* 318 F.3d 674, 677 (6th Cir. 2003).

---

[2] Additionally, Defendant Rooney brings a Motion for Judgment on the Pleadings under Rule 12(c), and Defendant Tekavec brings a Motion for Summary Judgment under Rule 56. Given that Meros did not respond to either of these motions within the required time, as discussed below, the Court does not address the applicable standards for these motions.

The Court may dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). The Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although liberal, Rule 12(b)(6) requires more than bare assertions of legal conclusions. *Allard v. Weitzman,* 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). Generally, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In short, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). It must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

A *pro se* litigant's allegations are held to a less stringent standard than those in pleadings drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Even so, courts are unwilling to "abrogate basic pleading essentials in *pro se* suits." *See Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) (collecting cases). Indeed, courts are not required to entertain a *pro se* plaintiff's claim that "defies comprehension" or allegations that amount to nothing more than "incoherent ramblings." *Roper v. Ford Motor Co.*, No. 1:09-cv-427, 2010 WL 2670827, at *4 (S.D. Ohio Apr. 6, 2010), *report and recommendation adopted*, 2010 WL 2670697 (S.D. Ohio July 1, 2010) (internal citations omitted).

In ruling on a motion to dismiss, a court may consider matters outside the pleadings without converting the motion into one for summary judgment if those matters "simply fill[] in the contours and details of the plaintiff's complaint, and add[] nothing new." *Yeary v. Goodwill Indus.–Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997). Such matters include documents attached to or incorporated into the Complaint, and public documents of which the Court can take judicial notice. *See Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), *abrogated on other grounds by Swierkiewicz v. Sorema*, 534 U.S. 506 (2002).

## III. ANALYSIS

### A. The Unanswered Motions Are Dismissed Without Prejudice.

Under this Court's Local Rules, a party must file a memorandum in opposition to a motion within 21 days after the date of service of the motion. S.D. Ohio Civ. R. 7.2(a)(2). "Failure to file a memorandum in opposition may result in the granting of any motion that would not result directly in entry of final judgment." *Id.* "[D]ismissal without prejudice is not a final judgment." *Rayfield v. Am. Reliable Ins. Co.*, 641 F. App'x 533, 537 (6th Cir. 2016) (internal citations omitted). In *Smith v. Muncy*, the Sixth Circuit affirmed a district court's dismissal of a plaintiff's claims without prejudice where the plaintiff failed to respond to defendant's motion to dismiss for lack of subject matter jurisdiction and where the court's local rules provided that failure to file an opposing memorandum may be grounds to grant the motion. *Smith v. Muncy*, 89 F.3d 835 (6th Cir. 1996) (unpublished table decision).

Upon review of the record, the Court observes that Meros has failed to respond to Defendants Youseff, McAllister, Miguel Chiappero, Sharon Chiappero, Rooney, Midian, Redman, and Tekavec's motions. Because Meros has failed to respond to these motions, like the district court in *Smith*, the Court assumes that this failure is "evidence of [Meros'] agreement that

the action[s] should be dismissed." *Smith*, 89 F.3d at 835. For all of these reasons, the Court **GRANTS** Defendants Youseff, McAllister, Miguel Chiappero, Sharon Chiappero, Rooney, Midian, Redman, and Tekavec's motions (ECF Nos. 23, 29, 32, 59, 61, and 28 as to McAllister) and the claims against them are hereby **DISMISSED** without prejudice.

## B. The *Rooker-Feldman* Doctrine Does Not Apply.

Defendant Sweeney contends that this Court does not have jurisdiction to review Meros' claims pursuant to the *Rooker-Feldman* doctrine. (ECF No. 28 at 6-7). The *Rooker-Feldman* doctrine "stands for the proposition that a federal district court may not hear an appeal of a case already litigated in state court." *United States v. Owens,* 54 F.3d 271, 274 (6th Cir.1995). The *Rooker-Feldman* doctrine is based on two United States Supreme Court decisions interpreting 28 U.S.C. 1257(a) which provides that final judgment of the highest court of a state may be reviewed by the United States Supreme Court by a writ of certiorari. *Lawrence v. Welch*, 531 F.3d 364, 368 (6th Cir. 2008). The negative inference is that if such appellate review is vested in the Supreme Court, it follows that such review may not be had in the lower federal courts. *Id.* In both *Rooker* and *Feldman*, the plaintiffs had litigated and lost in state court. *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 476 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 414 (1923). They then filed federal court complaints that "essentially invited federal courts of first instance to review and reverse unfavorable state-court judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283–84 (2005). The Supreme Court found that the cases were properly dismissed for lack of subject-matter jurisdiction.

In *Exxon Mobil Corp.*, the Supreme Court explained the limited circumstances in which the *Rooker-Feldman* doctrine necessitates dismissal for lack of jurisdiction—"cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the

district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284. If a federal plaintiff "presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Id.* at 293.

"In the wake of *Exxon*, [the Sixth Circuit] has distinguished between plaintiffs who bring an impermissible attack on a state court judgment—situations in which *Rooker-Feldman* applies—and plaintiffs who assert independent claims before the district court—situations in which *Rooker-Feldman* does not apply." *Lawrence*, 531 F.3d at 368 (internal citations omitted). The Sixth Circuit has held that claims that defendants procured state court judgments through fraud, misrepresentation, or other improper means are independent claims and thus *Rooker-Feldman* does not apply. *McCormick v. Braverman*, 451 F.3d 382, 392–93 (6th Cir. 2006). The *Rooker-Feldman* doctrine "is limited . . . to instances in which the litigant *only* seeks to reverse or set aside the state court . . . judgment." *Hines v. Franklin Sav. & Loan*, No. 1:09-CV-914, 2011 WL 882976, at *3 (S.D. Ohio Jan. 31, 2011), *report and recommendation adopted as modified*, No. C-1-09-914, 2011 WL 886128 (S.D. Ohio Mar. 10, 2011).

Here, Defendant Sweeney argues that Meros is asking for relief from state court judgments such as Sweeney's decision on the cognovit notes. (ECF No. 28 at 7). Meros contends, however, that he is not asking this Court to "review the corrupt state court judgment granting judgment on the cognovit notes." (ECF No. 30 at 3). Rather, he is seeking "a judgment . . . based upon the criminal actions, the predicate acts, and the overt acts" of the defendants. *Id.* This Court agrees with Meros that *Rooker-Feldman* does not apply. While the factual allegations do involve several previous judgments in state court, Meros is not seeking "only . . .

to reverse or set aside the state court . . . judgment." *Hines*, 2011 WL 882976, at *3. Rather, he

is seeking to hold the defendants liable for a RICO conspiracy. As the Sixth Circuit held in

*McCormick*, claims that the defendants procured the state court judgments through fraud or other

improper means are independent claims and thus *Rooker-Feldman* does not apply. Indeed,

Meros did not file this claim in federal court in the first instance, so he was not seeking to have a

federal court review the judgment of a state court. It was the defendants, not Meros, who

removed the claim to federal court. *See* ECF No. 1.

### C. Meros' Claims Are Barred By The Applicable Statute of Limitations.

Because the *Rooker-Feldman* doctrine does not apply, this Court can rule on the 12(b)(6)

motions.[3] The Court finds that all of Meros' claims against Ranke and Sweeney are time-barred

under the applicable statute of limitations.[4] Courts should not grant motions to dismiss on

statute-of-limitations grounds when there are disputed factual questions relating to the accrual

date, *Am. Premier Underwriters, Inc. v. Nat'l R.R. Passenger Corp.*, 839 F.3d 458, 464 (6th Cir.

2016), "[b]ut where one can determine from the face of the complaint that the statute of

---

[3] Defendant Ranke also moves the Court to dismiss Meros' complaint under Rule 12(b)(1) alleging res judicata. (ECF No. 22 at 4-5). Res judicata, however, is an affirmative defense, not a jurisdictional issue. *See* Fed. R. Civ. P. 8(c) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . res judicata"); *Hutcherson v. Lauderdale Cty., Tennessee*, 326 F.3d 747, 755 (6th Cir. 2003) (finding *Rooker-Feldman* and res judicata "are not coextensive and *Rooker-Feldman* should be considered first since its application strips federal courts of jurisdiction and the ability to hear a res judicata, or other affirmative, defense"). Thus, the Court need not decide res judicata before moving on to other affirmative defenses.

[4] While only Defendant Sweeney's motion argues that statute of limitations bars Meros' claims, the Court is empowered to dismiss a complaint *sua sponte* on statute of limitations grounds when it is apparent from the face of the complaint that the claims are time-barred. *See Alston v. Tennessee Dep't of Corr.*, 28 F. App'x 475, 476 (6th Cir. 2002) ("Because the statute of limitations defect was obvious from the face of the complaint, sua sponte dismissal of the complaint was appropriate."). As discussed in the remainder of the opinion, the Court finds it apparent from the face of the complaint that the claims are time-barred and thus applies the statute of limitations defense to Defendant Ranke's claims as well.

limitations has run, dismissal is appropriate." *Id.*; *see also Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 522 (6th Cir. 2008) (affirming dismissal for failure to state a claim on statute of limitations grounds).

The statute of limitations for civil RICO claims under the federal statute is four years. *Agency Corp v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 156 (1987). "The four-year period begins to run when a party knew, or through exercise of reasonable diligence should have discovered, that the party was injured by a RICO violation." *Sims v. Ohio Cas. Ins. Co.*, 151 F. App'x 433, 435 (6th Cir. 2005) (upholding district court's determination that RICO claims were barred by the statute of limitations). "Plaintiffs need not be aware of every minute fact underlying their RICO claims" in order for the clock to start running. *Id.*at 436.

The statute of limitations for violation of the OCPA is five years. O.R.C. § 2923.34(J); *Doe v. Archdiocese of Cincinnati*, 109 Ohio St. 3d 491, 500, 2006-Ohio-2625, ¶ 36, 849 N.E.2d 268, 277. Like a claim under the federal RICO act, a claim under the OCPA accrues when the plaintiff knew or should have known of the injury underlying the claim. *See Tri-State Computer Exch., Inc. v. Burt*, Hamilton Co. App. No. C-020345, 2003-Ohio-3197, ¶ 14, 20023 WL 21414688, at *4 (Ohio Ct. App. 1st Dist. 2003).

The statute of limitations in § 1983 actions is governed by the state statute of limitations for personal injury actions under the law of the state in which the § 1983 claim arises. *Porter v. Brown*, 289 F. App'x 114, 116 (6th Cir. 2008). In § 1983 actions where the injury occurred in Ohio, the two-year limitations period of Ohio Revised Code 2305.10 applies. *Browning v. Pendleton*, 869 F.2d 989, 990 (6th Cir. 1989). Federal law governs the question of when the statute of limitations begins to run. *Hodge v. City of Elyria*, 126 F. App'x 222, 224

(6th Cir. 2005). "Under federal law the statute begins to run when plaintiffs knew or should have known of the injury which forms the basis of their claims." *Id.* (internal citations omitted).

It is clear from the face of Meros' complaint that statute of limitations is appropriate ground for dismissal of the federal RICO claims, the OCPA claims, and the § 1983 claims, which all arise from the same facts. Meros alleges that the RICO enterprise began in 1993 when Sweeney granted judgment on two cognovit notes against Meros. (ECF No. 4 at ¶ ¶ 1, 40, 102). Meros alleges that the predicate act of fraud was completed by Sweeney and Ranke when they tampered with the Clerk of Court's docket between October 7 and October 13, 1994 in order to ensure that the praecipe was not properly filed. (*Id.* at ¶¶ 10, 26). He claims that the RICO enterprise would not have been successful if Sweeney and Ranke had not tampered with the docket, and admits that the tampering "resulted in all of the direct and indirect damage" in his complaint. (*Id.* at ¶ 26). Thus, Meros acknowledges that the injuries he complains of are all related to and stem from the tampering that occurred in 1994, over twenty years ago.

And there is no question that Meros "knew or should have known" of the alleged injuries many years ago. Meros admits that he knew of the RICO scheme as early as 1996. He states that he met with William T'Kindt of the FBI in 1996 and asked him to investigate Judge Sweeney. (ECF No. 4 at ¶ 277). Numerous other allegations in Meros' complaint make clear that he has known about the alleged RICO scheme for many years:

- After meeting with T'Kindt, Meros wrote a letter to Emily Sweeney regarding these allegations. (*Id.* at ¶ 280).

- In what appears to be a reference to his blog, Meros states: "This RICO enterprise has been exposed on the internet continuously since January 23, 2003." (ECF No. 4 at ¶ 7).

- Meros met with FBI SA Michael Massie twice in 2004 and twice in 2013. He provided documents detailing the RICO scheme to Massie, including RICO flow charts back in 2004. (ECF No. 4 at ¶¶ 276, 278).

- In 2010, Meros "again petitioned the FBI office in Cleveland to investigate this matter." (*Id.* at ¶ 279). Emails about the conspiracy were sent to the Attorney General's Office in Washington D.C. and to Cleveland SAIC Stephen Anthony. (*Id.*).

These examples make clear that Meros was keenly aware of the injuries he is alleging well over five years ago, which puts all of his claims outside the applicable statute of limitations (two, four, and five years, respectively, for § 1983, federal RICO, and OCPA claims).

Nor can Meros get around the statute of limitations bar by alleging recent acts committed in furtherance of the conspiracy. Meros alleges three recent acts that could potentially fall within the applicable statute of limitations. First, Meros alleges that the Chiapperos obtained a fraudulent recovery against him in bankruptcy court on April 18, 2013. (ECF No. 4 at ¶¶ 213, 227, 247). Second, Meros alleges that Redman and Midian began collecting a tax debt from him in September of 2016. (*Id.* at ¶¶ 24, 272, 274, 535, 356). Finally, Meros alleges that Dimon, Hilbert, Stone, and Coughlan recently failed to investigate his allegations. (*Id.* at ¶¶ 22, 44, 260, 272, 275, 352).

Even if these events were considered new, independent acts, Meros could not recover for any of the older conduct that falls outside of the statute of limitations—which makes up the vast majority of his complaint. *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190 (1997) ("[T]he plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period."). Thus, at the most, Meros could only recover for these three specific acts. He, however, cannot even do this, because he has "not shown how any new act could have caused [him] harm over and above the harm that the earlier acts caused." *Id.* In order to begin a new statute of limitations period, the new acts cannot be "merely a reaffirmation of a previous act"—it must "inflict new and accumulating injury on the plaintiff." *Lehman v. Lucom*, 727 F.3d 1326, 1331 (11th Cir. 2013). If the plaintiff fails to distinguish the injuries caused by the new acts from the injuries caused by

the time-barred acts, a new limitations period is not triggered. *See Grange Mut. Cas. Co. v. Mack*, No. CIV.A. 6:06-555-DCR, 2009 WL 1036092, at *6 (E.D. Ky. Apr. 17, 2009).

Here, Meros fails to distinguish the injuries caused by the new acts from the injuries caused by the time-barred acts and has not shown how any new act could have caused him harm over and above the older acts. Indeed, the major harm Meros appears to assert throughout the complaint is the loss of his law license, which occurred in 2000. *See* ECF No. 4 at ¶ 8 ("The RICO enterprise . . . focused its efforts upon depriving Plaintiff of due process of law in suspending and then disbarring Plaintiff from the practice of law. This was the goal from the inception of the RICO enterprise"). Thus, there is no way any action after 2000 could have contributed to the major harm Meros alleges.

Closer examination of the three recent acts Meros alleges confirms that they are not new, independent acts, but instead stem from the other allegations in the complaint that are time-barred. First, Meros admits that the fraudulent recovery obtained by the Chiapperos in bankruptcy court in April of 2013 was part of a "continuing series of overt acts" that "start[ed] in 1998." (ECF No. 4 at ¶ 227). He further admits that he knew of the fraud committed by the Chiapperos "sometime in 2006." (*Id.* at ¶ 210). Thus, any recovery based on fraud by the Chiapperos was not a new harm. Similarly, Meros admits that the tax debt Redman and Midian began collecting from him in 2016 stems from a debt that is eighteen years old and alleges that the debt is the result of the RICO conspiracy detailed in the complaint. (*Id.*at ¶ 274). Finally, the allegation that numerous defendants did not investigate the conduct of other defendants is not a new or independent act—on its face it is related to the acts of the other defendants that began in 1993. No independent harm came to Meros from the defendants failing to investigate the other alleged RICO acts. Thus, all of the recent overt acts identified by Meros are merely

continuations of prior predicate acts and cannot save his claims from the statute of limitations. Additionally, none of the recent acts even involves Ranke or Sweeney.[5]

### D.  Meros Fails to State a Claim Upon Which Relief Can Be Granted.

In addition to finding Meros' allegations time-barred, this Court finds that Meros fails to state a claim upon which relief can be granted under Rule 12(b)(6).  The complaint is littered with bare assertions of legal conclusions.  *See, e.g.*, ¶ 15 (claiming "Each of the Defendants . . . committed predicate acts pursuant to" a host of federal and state statutes); ¶ 17 ("The conduct of each individual Defendant demonstrates that he or she joined, supported, benefitted by, and aided and abetted that established RICO enterprise."); ¶ 42 ("The enterprise is associated in fact to 'function as an ongoing unit' and constitute an 'ongoing organization' which share a 'common purpose.'"); ¶ 44 ("Circumstantial evidence establishes Sweeney's conduct with the co-conspirators, in establishing this RICO conspiracy, as well as each individual Defendant's voluntary participation in it").  Without more, these unsupported conclusions cannot withstand a motion to dismiss.  *See, e.g.*, *Allard*, 991 F.2d at 1240.

Further, the Court finds that Meros' allegations are not plausible on their face.  For example, it is implausible that Defendant Ranke, who was a law clerk in 1993, has any sort of connection to Defendants Midian or Redman's debt collection actions in 2016.  Thus, the enterprise element of a RICO conspiracy is lacking.  *See, e.g.*, *Frank D'Ambrosi*, 4. F.3d 1378, 1386 (6th Cir. 1993) (finding no enterprise when plaintiff did not allege activity "that would show ongoing, coordinated behavior among the defendants that would constitute an association-in-fact").

---

[5] There are a few conclusory allegations that Defendants Sweeney and Ranke are somehow involved in the recent acts.  *See, e.g.* ECF No. 4 at ¶ 274 (stating that the alleged retaliation against Meros for his tax delinquency was motivated by his petition to the government to investigate Sweeney and Ranke in connection with tampering with the docket).  These bare assertions are insufficient to link Defendants to the recent acts.  *See, e.g.*, *Allard*, 991 F.2d at 1240.

Because the Court finds all of Plaintiff's claims against Defendants Ranke and Sweeney time-barred and fail to state a claim, this Court need not decide the remaining grounds for dismissal. Defendants' motions (ECF Nos. 22, 28) are hereby **GRANTED**. The claims against them are hereby **DISMISSED** with prejudice.

### E. Meros Is Declared a Vexatious Litigator.

Defendants Youseff and Ranke filed motions to declare Thomas Meros to be a vexatious litigator. (ECF Nos. 22, 24). A party's right of access to the court is not absolute or unconditional. *See In re Moncier*, 488 Fed.Appx. 57 (6th Cir. 2012). This Court has previously stated:

> Federal courts have recognized their own inherent power and constitutional obligation to protect themselves from conduct that impedes their ability to perform their Article III functions and to prevent litigants from encroaching on judicial resources that are legitimately needed by others. *Procup v. Strickland*, 792 F.2d 1069, 1073 (11th Cir.1986). The Sixth Circuit Court of Appeals has approved various prefiling restrictions imposed on harassing and vexatious litigators as an inherent constitutional and statutory power of the federal courts. *See, e.g., Filipas v. Lemons*, 835 F.2d 1145 (6th Cir.1987) (noting courts have authority to impose restrictions on harassing and vexatious litigators); *Feathers v. Chevron U.S.A.*, 141 F.3d 264, 269 (6th Cir.1998) (affirming courts ability to impose prefiling restrictions in matters with a history of vexatious litigation); *Wrenn v. Vanderbilt Univ. Hosp.*, Nos. 94-5453, 94-5593, 50 F.3d 11 (6th Cir. Mar. 15, 1995) (unpublished) ("This court has the authority to enjoin harassing litigation under its inherent authority and the All Writs Act, 28 U.S.C. § 1651(a) ...").

*Johnson v. University Housing*, No. 2:06-cv-628, 2007 WL 4303728, at * 12 (S.D. Ohio, Dec. 10, 2007).

Meros has repeatedly brought suit in different courts against many of the defendants in this action, amongst other persons or entities, regarding many of the same factual allegations at issue in the instant complaint. These actions include:

- *Meros v. Kilbane, et al.*, 1:95-cv-01660, *Meros v. McAllister, et. al.*, 1:96-cv-01061, Northern District of Ohio (alleging Defendant Judge McAllister and Defendant Judge Sweeney, among others, deprived Meros of civil rights in the state court proceeding involving the two cognovit notes).

- *Meros v. Sweeney, et al.*, 2:00-cv-00396, Southern District of Ohio (dismissing complaint alleging federal civil rights violations against Defendant Judge Sweeney and Defendant Coughlin of the Ohio Disciplinary Counsel, among others, based on the statute of limitations and *res judicata*).

- *Meros v. Michael Brooks AKA Rorapaugh M Brooks Rorapaugh, et al.*, CV-99-386996 (complaint against Defendant Rorapaugh, among others, filed in Cuyahoga County Court of Common Pleas that was dismissed with prejudice).

- *Meros v. Michael Brooks AKA Rorapaugh M Brooks Rorapaugh, et al.*, CV-00-424208 (the exact same complaint that was dismissed with prejudice in the above action).

- *Meros v. James W. Tekavec, et al.*, cv-98-370854 (civil rights complaint for legal malpractice against three attorneys including Defendant Tekavec).

- *Meros v. Hon. Terrence O'Donnell*, et al. 1:07-cv-436, Southern District of Ohio (alleging RICO claims and violations of § 1983 against the justices of the Ohio Supreme Court related to his disbarment).

- *Meros v. Chiappero*, No. 06-cv-2894, Lake County Court of Common Pleas (Ohio Misc. Aug. 1, 2007) (Meros sued the Chiapperos in connection with the sale of his home).

Of the seven cases listed above, all were dismissed by the Court, with the exception of *Meros v. Chiappero* where the jury found for the Chiapperos on all of their counterclaims. In at least two of the cases the Court granted motions for sanctions against Meros, awarding costs and/or attorney's fees. In considering the above actions, which name some of the same defendants and arise out of some of the same facts at issue here, it is apparent that Meros has filed numerous frivolous lawsuits and has been a drain on judicial resources. He has forced many defendants to bear the costs of repeated litigation. As the Sixth Circuit stated back in 1997, "Meros's . . . pursuit of . . . frivolous claim[s] against the . . . defendants has caused additional expense to those defendants." *Meros v. Kilbane*, 107 F.3d 12, at *4 (6th Cir. 1997). Meros' crusades and attempts to "evade . . . debt[s] by pursuing meritless claims unreasonably and vexatiously multipl[y] ... litigation." *Id.* The Court thus finds that Meros is a vexatious litigator.

Meros is hereby warned that Rule 11 sanctions will be imposed if he continues to file frivolous lawsuits alleging that defendants participated in a RICO scheme or caused him to lose his law license.[6] Furthermore, it is **ORDERED** that Meros is barred from filing any action in this Court without submitting a certification from an attorney that his claims are warranted. Finally, if he ever files a complaint in this or any other Court concerning his dealings with any of the defendants in this case, his complaint must include the caption and case number of all the prior actions he has filed against the named defendants.

## IV. CONCLUSION

For the reasons, Defendants' motions (ECF Nos. 22, 23, 24, 28, 29, 32, 59, 61) are **GRANTED.** Meros' claims against Defendants Youseff, McAllister, Miguel Chiappero, Sharon Chiappero, Rooney, Midian, Redman, and Tekavec are dismissed **WITHOUT PREJUDICE**. Meros' claims against Defendants Ranke and Sweeney are hereby dismissed **WITH PREJUDICE**. The case is thereby **DISMISSED IN ITS ENTIRETY**. Meros' motions to take

---

[6] The court declines to impose sanctions for the suit *sub judice* at this time but warns that Rule 11 sanctions will be imposed if he continues to file frivolous lawsuits. Rule 11 provides:

By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

judicial notice, evidentiary motions, and other nondispostive motions (ECF No. 35, 39, 55, 56, 62) are hereby **MOOT**.  Meros is declared a **VEXATIOUS LITIGATOR** and may not file new complaints in this Court without submitting certification from an attorney that his claims are warranted.

**IT IS SO ORDERED.**


 /s/ Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: December 20, 2017**